Oral argument not to exceed 15 minutes per side. Mr. Jensen for the Defendant Appellant. Good morning. Good morning, Your Honors. Peter Jensen on behalf of Defendant County of Macomb. I will reserve three minutes for rebuttal. This case arises out of originally a lawsuit filed by Mr. Stanley against the Macomb County Sheriff in 2017. That case alleged that the sheriff had in fact retaliated against Mr. Stanley for him asserting his First Amendment rights to support another political candidate who was running for office. That case was dismissed on a motion in 2018. In 2019, this lawsuit starts. The delay in how long this case goes is it was originally signed to Judge Cohn who got ill in that period of time. It was then transferred, I believe, to Judge Cox and then subsequently went to Judge Lawson. So I looked at the time of the complaint and went, wow, what happened there? But that sort of lays it out. In 2019, Stanley files another lawsuit, this time against not only the sheriff, Mr. Wickersham, but also the undersheriff, Elizabeth Garga, in the county. The case first alleged, once again, a First Amendment violation arising out of the previous lawsuit and that criminal charges had been brought against him. He also added claims for Whistleblower Protection Act and defamation. Those were dismissed. The outcome, then an amended complaint was filed. The outcome after the amended complaint was filed before trial. So you're bringing a sufficiency claim from the jury verdict, is that right? Yes. I looked in the record and maybe I'm missing it. Did you renew your motion for judgment as a matter of law? Did you make a 50-B? I made a motion at the end of the plaintiff's proofs. But don't you have to make another one? We did not. You did not make one? We did not make a case. So under Ortiz v. Jordan or Unitherm, one of those cases, doesn't that mean you can't bring a 50-B appeal? We immediately filed an appeal following the judgment within two weeks, I think, quite frankly. It was pretty soon. That's what the record says and that's what happened. I believe that the second half is there's a material injustice if the judgment were to stand based upon the record below. But to Judge Nobanian's question, I think the Ortiz Supreme Court decision from 2011 holds that the precise subject matter of a party's 50-A motion, namely entitlement to judgment as a matter of law, cannot be appealed unless the motion is renewed pursuant to Rule 50-B. Here you admit that you did not renew it by 50-B and I think under Supreme Court precedent it can't be appealed. What do you say to that? What do I think of that? I'm not pleased. I believe that the record was preserved for the purpose of the appeal of the Spanner-Herbin jury verdict. The day that you made the 50-A, was that the same and then the defense case? It's not clear to me on the transcript. Is that one day? The trial went for five days. What happened was Ms. Ortiz, actually all of her witnesses were witnesses I would have relied upon and called. One witness, the judge, was taken by video deposition. We heard that at the same time we heard one of Ms. Ortiz's witnesses, Captain David Kennedy. But that was heard at the same time simply because the court... When you made the 50-A motion, I'm just curious because the judge does say on one part of the 50-A that he's taking it under advisement, which I assume means he's going to revisit that. I don't know. I'm curious, was that the same, how long was the defense case? Was it more than that day? We had only one witness. They had one witness? One witness after that, the prosecutor. So we called the prosecutor as he witnessed it. He had never met with the sheriff or under Sheriff Darger or anyone else concerning the case. Never spoke to the sheriff, never received any information from the department. Showed there was no policy. And then my understanding of your argument on appeal is are you only challenging whether there was a policy or not? Two things. One, the policy, but an ancillary to that is always the statement that the judge allowed in. The answer is that didn't, in our opinion, create any policy. That the issue of a sheriff deciding to investigate two instances where you have evidence of abuse. My question is under Monell, this is a Monell case, right? Right. There has to be a policy, but there also has to be something that was unconstitutional. Right. Okay. Are you challenging whether there was anything unconstitutional? Yes. Yes? Yes. Okay. What is your argument on that point? The very broad claim of the plaintiff in this case is that the policy she believes is an unwritten policy to target the plaintiff in this case. That's her claim for policy. When I read Pembauer and Propotnick, it states in my reading of it that one, the policy has to be based upon the scope of the office. And Propotnick says statutory authority. And I don't think the sheriff has an authority to tell a judge what to do with a case. That's outside the realm of what the duties of a Michigan sheriff is under statute. But the allegations of a policy here to retaliate against the plaintiff are more than what the judge does about a case, right? The allegations here and some of what the jury heard was about investigations and fairly targeted towards the plaintiff. That the plaintiff was treated differently with respect to these two incidents than other officers who maybe were also involved in these incidents. That the allegations of a policy go well beyond this kind of one statement with the judge. Why couldn't a jury rely on all of that? The fact that they didn't want this use of force specialist to write a report saying that this was an appropriate use of force for one of the incidents. How is that, I mean, maybe you'll say it's circumstantial evidence of a policy or maybe your argument's not enough. But why couldn't a jury rely on it? I don't think there was any evidence below to tie the concept of retaliation to the sheriff to do anything. The sheriff's name is only mentioned several times throughout the five days of trial. And it came really up in the statement of what Sergeant Abdu said that he thought he heard the sheriff say. Short of that, we have six county witnesses called. Nobody asked any of these witnesses if they ever talked to the sheriff or the sheriff contacted them. There was no evidence the sheriff existed in this case really until we get to Sergeant Abdu. And Sergeant Abdu wasn't, you know, he said it's a close question. He said the fact that I came up with this opinion that I think Stanley's actions were not violative, he said people can disagree with me. I think that's, you know, isn't the basis to establish anything. But more importantly, if you are alleging that in the investigation of a case that's basically that is taken by the prosecutor for prosecution, we should start with the U.S. Supreme Court standard that says you have to show not only that the non-prosecuting party, in this case the sheriff, retaliated. You have to somehow show that the non-prosecuting party misled the prosecution on reaching the decision. What happens in this case is there's a total breakdown or ending. It just stops. It went to a seasoned investigator. She said that... So this is interesting. So this case, really the First Amendment retaliation, the adverse action is really essentially a malicious prosecution. Is that right? Correct. So the minor sting of the law, although I don't know that it was cited by you, is that they basically just collapse into each other in a case like this. And that the plaintiff would essentially have to prove a malicious prosecution. Is that right? Yes. Okay. And one of the elements of a malicious prosecution would be that there was no probable cause to...  And the prosecutor here pursued the case regardless of why the investigation was initiated. It passed muster, I suppose, under the prosecutor. And so the plaintiff would have to prove that the law enforcement people misled the prosecutor. Is that your...  But I don't see any jury instruction. Did you request a jury instruction on any of this? Like, hey, this is... Your Honor, this is really a malicious prosecution case. The adverse action prong of the retaliation really should be about malicious prosecution. Because of this probable cause, we think there's no way the jury's going to find this. I don't see any of this being argued below. Am I missing something? Candidly, Your Honor, I... You know, you think you'll lower the case when you're prepared for trial and try it, and then you write the appeal. And I candidly can't tell you that. I know we had discussions, obviously, as counsel does in chambers with the court. We did not object to the jury instruction. So I can't say... And that was my motion. My Rule 51 motion was, judge, there's no evidence of this, and that's what the judge took under advisement. And then when the jury came back with no cause of action, he just dismissed it and didn't discuss it. That's my recollection. I don't want to... Well, the jury came back with a verdict in favor of Stanley for a quarter million dollars, didn't they? In favor of Stanley against the county only. Yeah, yeah. I mean, that's... Well, there's no other... Yeah, they found in favor of Darga cause of action. But... All right. I guess we understand your argument. Anything further? Judge Mobandian? Judge Bumgatz? Thank you. Thank you. Good morning. Extensive transcript, your honors. Good morning, your honors. May it please the court. Nanette Cortese appearing on behalf of the plaintiff, appellee James Stanley. Your honors, with all due... With much respect, I would like to start my argument by citing to a recent congressional hearing a concurrence by Judge Mobandian in the recent case of Stucker v. Louisville Metro Government. The court of appeals number is 23-5214. The case was decided on May 13th, 2024. In that case, Judge Mobandian stated in his concurrence, given that we have found arguments averted to in a perfunctory manner to be forfeited, and Judge Mobandian cites Butenmiller, B-U-E-T-E-N, M-I-L-L-E-R, Femacombe County Jail, 53 F-4th... What is the argument here then? What are you saying he forfeited? I'm saying, your honor, the argument raised by appellant in their brief on appeal. I cite, your honors, to the summary from appellant's brief on appeal. Appellant's brief on appeal argued that Judge Lawson could not have found the statement that the sheriff was going to call Jake, Judge Femininio, that Judge Lawson should not have found that that was the policy, that that statement could represent a policy or was the policy of the Macomb County County. Well, it seems to me that the policy in this case is the retaliation. Yes, your honor. That's what you're arguing. Yes, your honor. I think the real question is, one of the questions is, the sheriff is a policymaker. What links the sheriff, and the sheriff, by the way, has been dismissed from the case, right, under 12B-6? Yes, your honor. There wasn't enough evidence, there wasn't enough pled to keep the sheriff in the case as a party defendant. What is the evidence that links the sheriff to the retaliation policy other than the alleged phone call? There's that. What else is there? Yes, your honor, and there was in fact other evidence from which Judge Lawson specifically in his opinion, I'm sorry, in his ruling on the Rule 50 motion where we only had an oral motion. There were no written motions brought by Macomb County itself in this case. Judge Lawson identifies the statement, I'm going to call Jake, the second one won't be dismissed. He identifies that as one piece of evidence the jury could consider, but there were others. I'm going to refer the court to the press release that was admitted as an exhibited trial. In the press release, Sheriff Wickersham, and it is a quote from Sheriff Wickersham, he takes it upon himself to go to the press to issue a release after the charging of James Stanley before any of the criminal charges. He specifically references James Stanley by name and he accuses James Stanley of having acted criminally before any finding of guilt or innocence. Further, your honors, we also have the testimony by Sgt. Philip Abdu. And the jury can evaluate credibility. Sgt. Abdu, I think, came in very credibly at the trial. Sgt. Abdu talked about the fact that with respect to the tasing incident video, Howe, H-O-W-E, that he found the use of force was not appropriate and James Stanley was retrained on that. He was directed to in his practice, as his practice always was. Wait, did Abdu link that, any of what he did to the sheriff? Did he say, I told the sheriff this about him? Yes, yes. In fact, your honors, in the record. In that same meeting where the sheriff said that he had called the judge? Yes. That's all the same meeting. What happens, your honors, is... I'm just trying to... I'm sorry, Judge, I didn't mean to step on your question. I apologize. We got the press release. We got the meeting with the alleged call to the judge. What else do we have? What we have... Did he direct the investigation? Did he tell an officer, hey, go look at this tape and tell me what you think? What we know, your honors, is that the sheriff's department is a paramilitary organization. Orders flow down. We know that when Sgt. Abdu, in his testimony, when he went to his commanding officer, David Kennedy, and he said, I looked at the Tyndall video. I think that use of force was good. One of the first things Kennedy did, Kennedy says to him, come with me, and takes him almost immediately into a meeting with the sheriff, the under-sheriff, Detective Sgt. Morfino, and basically says, tell him what you just told me. And in that meeting, Abdu conveys to the sheriff that he found the use of force in the Tyndall incident to have been appropriate. The sheriff says he doesn't agree with that. Abdu testifies in trial that in his years of experience with the sheriff's department, his years of being a use of force expert, hundreds of cases, he'd never known the sheriff to disagree with one of his findings, and almost immediately after that meeting, very shortly thereafter, same day, his commanding officer, Captain David Kennedy, comes into his office and instructs him not to prepare a written report. Not to prepare a written report of his finding that the use of force in Tyndall was appropriate. And this was acknowledged that if he had prepared such a report, it would have been exculpatory. Can I ask you a couple of questions? Of course, sir. Of course, Your Honor. On the adverse action issue, other than the prosecution, was there any argument at trial that there was any other adverse action other than the criminal trial? I believe there was some tangential reference to possible... Was there employment consequences? Was there anything else? Yes, Your Honor. What happened was when Sergeant Stanley was charged, he was placed off on an administrative leave. He was off on administrative leave, I believe, almost for two years with these charges hanging over his head. What happened was because of that, and there was testimony at trial to this effect, and one of the exhibits that was admitted, I believe, was some pay records. Because of this, he wasn't eligible for some of the shift premiums that were being offered during COVID. Was that administrative leave, would that have been normal for anybody that was under indictment or whatever? Was that just a result of the criminal charges themselves, or was that something unique to him? And I hesitate, Your Honor, that was not brought out in the record. I don't want to misspeak. I don't want to say anything to this panel that I can't 100% back up. I believe it was a policy of the department that if you were being criminally charged, you were placed on administrative leave, but I don't know the answer to that. What I do know is what was exceptional in Jim Stanley's situation, and this was brought out in trial, was that under the collective bargaining agreement, he should have been informed when, in February, I think it was when he was first placed off on administrative leave. There was issues, and this was brought out at trial, that the collective bargaining agreement wasn't followed with regards to Stanley being given notice of what sort of he was being accused of and why he was being placed off on administrative leave, and I believe he was placed off on administrative leave in February. I believe he was actually indicted in May, but again, I don't have that exact cite to the transcript. Of course, Your Honor. We talked earlier with your friend on the other side about the failure to make a 50B motion and whether that forfeits his sufficiency argument. So I'm curious. You noted in your brief that they had filed a 50A, but you did not note that they did not file a 50B. You did note in your brief that they did not file a 50B, but you didn't make the next step, which would be to argue it's forfeited. I did not, Your Honor. You did point out in your brief. I've got your brief in front of me. You mentioned there's no post-trial motions of all filed, which would be a 50B. Absolutely. Why didn't you argue forfeiture? To be 100% honest, I was not aware of the case, and I appreciate the court bringing it to my attention. All right. Now the question is, is it jurisdictional for us, or is it a claim processing rule? Do we have jurisdiction over this issue or not? I would submit you do not. What else I would submit is, as the appellee, it is only my job to respond. And it is, in fact, again, Judge Nalbandi, and I was citing your concurrence, that it is only this court's job to look at the arguments made by Macomb County, and all Macomb County argued was a Rule 50 motion. The jury instructions were stipulated to, Your Honors. We spent days working on the jury instructions, between the two of us. Judge Lawson then looked at the instructions in chambers. He worked very hard on the instructions, and before they were submitted to the jury, Judge Lawson was very clear on the record of making sure that both myself and counsel from Macomb County stipulated to the jury instructions. Another reason I have a problem addressing, or perhaps reversing a trial judge, in failing to grant a post-judgment motion that has never been filed, I have a problem to conceptualize that there is reversible error by the trial court. Because a party does not properly litigate the issue, nevertheless, in my view, we have to give the trial judge's deference, and that I think it is inappropriate for us to reverse if the trial judge has not been presented with the issue. Would you agree with that? I would agree with that. And I would state, Your Honors, we take the cases as we find them. We take the arguments as we find them. There was never a written motion in this case by Macomb County. They had ample opportunity to do so, Your Honors. This case lasted several years. Macomb County never brought a Rule 12b-6 motion. They never brought a Rule 56 motion. They made the strategic decision, Your Honors, for whatever reason. This is a Macomb County. They have counsel. They have resources. They made a decision, Your Honors, that after the jury verdict, they made the decisions to immediately appeal to this court. They made the decision to say, Judge Lawson found that under Monell, that it could proceed to the jury. What Judge Lawson did find is he took the Elizabeth Darga. He took the Rule 50 motion with respect to Elizabeth Darga under advisement. And he specifically stated... About the county part. Exactly. He was found not liable. Exactly. So it didn't matter at that point. Exactly. But he determined... And again, the argument, the Rule 50, even the Rule 50 argument to him. A lot of the focus of Macomb County's arguments in the Rule 50 argument was on Elizabeth Darga. And then it focused on whether the sheriff was the highest authority. Judge Lawson, in my opinion, a very learned judge. A pleasure to try a case in front of. Judge Lawson found that under Monell, the sheriff could be the highest policy maker. Judge Lawson, having sat through a five-day jury trial, Judge Lawson cited specifically the statement, I'm going to call Jake the second one won't be dismissed. But Judge Lawson found that there was evidence from which the claims against the county could go to the jury. The jury, the considered jury, they spent probably about four hours on a Friday afternoon before Labor Day deliberating this case on stipulated jury instructions. We have to assume they followed Judge Lawson's instructions. And they were able to find, on the totality of the circumstances, after being instructed by Judge Lawson on direct evidence, circumstantial evidence, after being instructed by Judge Lawson that they had to find a policy that came down from Sheriff Wickersham, the jury came back with a verdict against Macomb County, which Macomb County then elected to immediately appeal to this court. And it appears my time is counting down, Your Honors. All right, any further questions? Judge Labande, Judge Blumkopf. Thank you very much, Your Honors. Three minutes rebuttal, Mr. Jensen. My rebuttal will be brief. First of all, I guess I could argue that I happily waive the issue concerning the filing of the motion of the trial judge under subsection B. I understand what Judge Griffin said, and the panel will obviously make its decision accordingly. I would suggest that... Do you think it's fair to the trial judge to reverse him on a matter that was never brought to his attention? I mean, that's what we would do if we would say the failure of a litigant to raise this forfeits the issue, and therefore we review it anyway. Is that fair to the trial judge? Well, I didn't know we had to be fair to trial judges, but... Well, yeah, I think that's our function. I understand what the court's saying, and I understand, before I ever did this, I was an appeal lawyer for a long time, and I understand the concept of wanting to have the most precise record, which is often helped by the district judge making decisions and being addressed fast, which will eventually be raised. I think we did raise the issue of whether the sheriff was a policymaker ad nauseum. That wouldn't surprise him. Basically, you argue there's not a policy, and maybe he's not the decision-maker. You didn't argue that there was no adverse action taken, did you? It wasn't raised as a question. It's not raised as an issue in your brief. You have one issue brief on appeal, and it basically claims there's not a policy. The issues... Ms. Cortese misstated the fact there was, in fact, a motion for summary, or was it 12B-6 or 56, as to Wickersham and Darga, and Judge Lawson wrote extensively on the standards involving adverse action and, in fact, found, under the pleadings, there was no proof of any adverse actions. I think the three were an administrative leave. He complained about it. He complained about, I think, switching shifts and some other thing, but the court said none of those rules were a constitutional standard under Thaddeus X, and therefore was another reason to dismiss Wickersham. All right. Anything further? No. All right. Thank you. Thank you for your arguments. The case will be submitted. I believe that concludes our oral argument docket for this morning. With that, you may adjourn the court.